## 73688. HUTTO v. SHEDD.
(353 SE2d 596)

BIRDSONG, Chief Judge.

Damages for Negligent Construction of Home. Mr. and Mrs. Shedd contracted with Ira E. Hutto to design and construct a home for them modeled after a home previously built by Hutto and displayed as a model home. The Shedd home was built by Hutto in 1979. The house was a two-story building with the main structural support for the second story (in addition to the side walls) being a 17-foot long center support beam running across the width of the home in between the ceiling of the living room on the first floor and the floor

of several rooms in the second story. This structural support beam was fabricated by Hutto out of three 2x10 planks. After several years, perhaps beginning in 1980 but not becoming wholly manifest until 1983 or 1984, the living room ceiling began to sag with continuing creaking and snapping until the living room ceiling had sagged approximately 2 inches. As a result, the doors of the second floor would no longer fit into the door frames to a closed position nor would windows move, all indicating that the entire structure had sagged or fallen. There is no dispute that the sag was plainly visible.

Expert testimony was offered by Shedd to show that three laminated 2x10 planks, even when supported by intervening plywood, were not sufficient to support the weight of the second story. The expert testified that a steel I-beam was required. Other evidence was offered that after Shedd made known the sagging problem, Hutto started to use a steel I-beam in new construction in lieu of the wooden structural support beam. Hutto offered evidence that a tornado had occurred in 1980 and that the sagging could have been caused by wind damage. Hutto also offered testimony that he had built many houses of the same type using the wooden structural beam without experiencing the sagging in the Shedd home. Hutto offered evidence that the sagging could be corrected at "little cost" and would require only a few days to correct. In rebuttal, Shedd offered evidence that in order to correct the problem it would take $20,108 in construction and material costs and require almost a month. Shedd testified that he paid $30,725 for the house and because of the nature of the sagging of the ceiling (supported by an ungainly post in the middle of the living room to stop further sagging or collapse), the house had no economic value to him or his wife. He sought a recovery of the entire purchase price. After the charge of the court without objection by counsel, the jury returned a verdict in favor of Shedd in the amount requested, $30,725. Hutto brings this appeal urging error in the denial of his motion for new trial, and specifically enumerating three asserted errors. *Held*:

1. In his first enumeration of error, Hutto complains the trial court erred in allowing Shedd to call as a rebuttal witness the expert who testified as to the replacement cost of the home, contending that the witness was not disclosed in the pre-trial order and further the witness testified as to matters that should have been brought out in the case in chief and not on rebuttal.

We find no merit in this enumeration. It is clear that Hutto left with the jury evidence that the repairs to the house were not significant, would not be very expensive and would inconvenience the Shedds for only a short time. The rebuttal witness testified to the contrary that the cost of placing the house in the proper condition would cost $20,108 (⅔ of the value of the original cost of the house)

and would require the Shedds to be out of the house for almost a month. Even though this evidence tends to establish the extent of the damages and could have been offered during Shedd's case in chief, it likewise constitutes appropriate rebuttal evidence. Questions of admissibility of such evidence lie wholly within the sound discretion of the trial court. *City of Atlanta v. Hampton*, 139 Ga. 389 (1) (77 SE 393). We find no abuse of discretion in this case.

2. In his enumerations of error 2 and 3, Hutto contends the verdict of the jury is not supported by the evidence nor within the range of the evidence. While this contention is not wholly accurate, there is much substance in these enumerations. We first note that both Mr. and Mrs. Shedd testified the house "was worthless" in its present condition. It is clear that such testimony addressed the usefulness of the house and not its value. To say that a two-story house has absolutely no value because of a structural defect wholly ignores the fact that salvage value alone gives substantial value. Secondly, while purchase price gives some indication of value, it cannot suffice to establish value of a defective structure some six years old. Lastly, neither of the Shedds demonstrated any basis for their opinion as to value except that they doubted the house could be sold and to them they had not received what they bargained for and thus the house had no value to them. Each Shedd admitted they were not familiar with building costs or procedures nor did either offer any basis for their opinion that the house had "no value." See OCGA §§ 24-9-65; 66. *Smith v. Millen Properties*, 179 Ga. App. 165 (345 SE2d 625); *Varnedoe v. Singleton*, 154 Ga. App. 332 (268 SE2d 387). Thus we must conclude there was no rational basis for their value opinions and furnish no basis for the jury's consideration of value. See *Hoard v. Wiley*, 113 Ga. App. 328 (147 SE2d 782). See also *Smith v. Gen. Fin. Corp.*, 143 Ga. App. 390, 391 (238 SE2d 694).

The true measure of damages under the facts of this case is the difference between the value of the house as it should have been done and as it actually was done. *Classic Restorations v. Bean*, 155 Ga. App. 694 (6) (272 SE2d 557). This difference in value may be established by evidence of the reasonable cost of correcting the defect. *Mabry v. Henley*, 123 Ga. App. 561 (2) (181 SE2d 884). See *Kuhlke Constr. Co. v. Mobley, Inc.*, 159 Ga. App. 777, 780 (2) (285 SE2d 236).

The only credible evidence supported by expert opinion as to value of repair and restoration was that offered by the Shedds' expert. That evidence offered without contradiction established that the house could be put into the condition for which the Shedds contracted for $20,108. This evidence then constituted the upper range of the claim for damages put forth by Shedd. Accordingly while we find support for the jury's finding of liability against Hutto, we can find no support for a monetary judgment in excess of $20,108. Thus we will

affirm the judgment if upon remand appellee Shedd will write off all sums in excess of $20,108 plus interest; otherwise reversed.

*Judgment affirmed upon condition. Deen, P. J., and Pope, J., concur.*

DECIDED JANUARY 30, 1987.

*Morris S. Robertson,* for appellant.
*Ward Stone, Jr.,* for appellee.