In re **FRIED GROUP, INC.,**
d/b/a **Sundance Tractor**
**& Mower, Debtor.**

**HOLDEN MACHINERY, Movant,**

v.

**SUNDANCE TRACTOR & MOWER,**
**Respondent.**

**Bankruptcy No. 96–53971.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Jan. 16, 1998.

Wesley J. Boyer, Macon, GA, for Movant.

Ward Stone, Jr., Charter Medical Building, Macon, GA, for Respondent.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion For Reconsideration By Holden Machinery ("Holden"). The subject order resolved Holden's Motion To Terminate Financing Agreement, To Obtain Possession Of Consigned Goods, And For An Accounting.

The Court's determination of that motion was a core matter within the meaning of 28 U.S.C. § 157(b)(2)(O). Reconsideration of the order is, likewise, a core matter within the meaning of that section. Fried Group, Inc. d/b/a Sundance Tractor & Mower ("Sundance") opposes Holden's Motion For Reconsideration. After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Holden, a company based in England, and Sundance, a company based in the United States, had a business relationship where Holden would sell used farm equipment to Sundance which would resell the equipment to consumers in the United States. As a result of financial difficulties, Sundance filed this bankruptcy case. In response, Holden filed a Motion To Terminate Financing Agreement, To Obtain Possession Of Consigned Goods, And For An Accounting. Sundance alleged that the amount of Holden's claim should be offset by certain repair costs it incurred to correct defects in fourteen items of equipment it had purchased from Holden. A hearing was held on April 29, 1997. At the close of that hearing, the Court announced a ruling on Holden's motion. An order memorializing the Court's ruling was entered on May 27, 1997. The Court held the following: (1) the total contract price of the fourteen pieces of equipment sold was $65,750.00, (2) the total reasonable cost of repairs on the equipment incurred by Sundance was $7,292.87, (3) Sundance was entitled to a credit of $32,073.27 (representing payments made to Holden plus credit for returned goods), (4) Sundance was entitled to $629.29 as a reimbursement for an import fee paid on behalf of Holden, and (5) Sundance was entitled to $2,688.50 as attorney's fees. These figures result in Holden holding a net claim of $23,066.07 against Sundance's bankruptcy estate.

### Conclusions of Law

Holden asks for reconsideration of the

April 29, 1997 Order[1] on the grounds that (1) "the evidence as presented was insufficient under Georgia law to authorize any award of damages for breach of warranty," (2) "the award of attorney's fees to the debtor's attorney was erroneous because the Uniform Commercial Code does not provide for the recovery of attorney's fees to the prevailing party in a breach of warranty action, and an award was not supported by any other statute or rule," and (3) "the debtor failed to give notice of defects and is therefore barred from any remedy for breach of warranty." Sundance responds that Holden, by failing to raise the issues at trial, has waived its right to oppose both the award of attorney's fees and the use of repair costs as an appropriate measurement of breach of warranty damages.

## EVIDENCE OF REPAIRS

Holden questions the sufficiency of the evidence presented at trial on the issue of damages for breach of warranty. In Georgia, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." O.C.G.A. § 11–2–714(2).[2] In its ruling, the Court determined that evidence regarding the cost of repairs was relevant and persuasive on the question of the difference "between the value of the goods accepted and the value they would have had if they had been as warranted." Holden disagrees with this conclusion, stating that Sundance failed to meet its evidentiary burden to establish the value of the goods accepted because, under Georgia law, repair cost figures are not sufficient for this purpose. The Court disagrees and reaffirms its conclusion that the reasonable repair cost figure of $7,292.87 is the proper measure of damages for Holden's breach of implied warranties.

At the hearing, Holden argued that repair costs are an inappropriate measure of damages because, in some cases, they would allow the buyer a windfall. Citing the example of an automobile collision where the repair costs exceed the value of the vehicle, Holden explained that, in such a situation, the proper measure of damages would be the value of the vehicle before the accident rather than the cost of repairs. Otherwise, the owner of the vehicle would profit from the accident. In factual scenarios analogous to the one noted by Holden, repair costs might be an inappropriate measure of damages for breach of warranty. If the cost of repairs exceeded the value of the equipment sold, the Court would not award such costs as damages. In fact, in this case, the Court concluded that some of the repair costs needed to be adjusted to make them reasonable.[3] The theory presented by Holden does not discredit the probative value of the evidence of adjusted repair costs presented by Sundance to show the measure of damages in this case.

---

1. The decision was announced from the bench on April 29, 1997, and set out in a written order entered on May 27, 1997.

2. In its entirety, O.C.G.A. § 11–2–714 states the following:

     (1) Where the buyer has accepted goods and given notification (subsection (3) of Code Section 11–2–607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

     (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

     (3) In a proper case any incidental and consequential damages under Code Section 11–2–715 may also be recovered.

3. The Court reduced some of the labor costs from $45 per hour to $25 per hour. Apparently, the $25 per hour rate was initially utilized by Sundance to calculate the repair costs. However, after some "bad blood" had developed between the parties, Sundance increased the labor cost to $45 per hour. The Court found this rate increase to be unreasonable, and, therefore, required that all repair cost figures be recalculated at the lower rate. A general principle of the commercial statutes in Georgia is that the aggrieved party be put in "as good a position as if the other party had fully performed." O.C.G.A. § 11–1–106(a). Implicit in this policy is the idea that no party should be put in a better situation than it would have been absent breach.

Holden's reference to an award of repair costs confuses the issue in the case. Simply stated, Holden is correct that repair costs are not recoverable as a measure of damages. However, such a simple statement ignores the factual context of this case. Using Holden's example of an automobile, consider the case of the sale of a collector's item, such as Elvis Presley's Cadillac, on display in Memphis, Tennessee. If the car's engine did not run, its buyer would expect little success in a claim for offset based on repair costs. The value of that item lies in its worth as an exhibition and is not likely to be affected by the performance characteristics of its engine. The required proof of damages in that setting would be vastly different from this case.

Here, Holden's claim is based on sales of numerous items of farm equipment, each one intended by both parties to be resold by Sundance in a retail market. Unlike Elvis Presley's Cadillac, the mechanical condition of each of these items is an important element of their value. In determining the reasonable repair costs of each item, the Court also considered whether it was necessary to make the repairs for Sundance to realize the value of the items as warranted. If the cost of repairs had exceeded the purchase price of any item or if the cost of repair had not appeared to correspond on a dollar for dollar basis to the value of the items as warranted, the award of such costs would not have been appropriate.

Reviewing the case authorities, it appears that the most persuasive case is *Taylor v. Wilson*, 109 Ga.App. 658, 137 S.E.2d 353 (1964). *Taylor* recites different types of damages which can be recovered by one injured by a seller's breach of the implied warranty of merchantability. Of importance here is the language that a purchaser may recover "the reasonable cost of making repairs or correcting defects if incurred by him [citations omitted], or if, by reason of the breach or defects the machine or equipment can not be made to operate properly by making repairs or correcting defects, ... the difference between the amount paid and the value of the chattel." *Id.* at 660, 137 S.E.2d at 355. Even though this case was decided before the Uniform Commercial Code was adopted as Title 11 of the Official Code of Georgia Annotated by Georgia's state legislature, the rules of law established by the case remain intact today. In fact, *Taylor* has been specifically cited as good law by at least one post-codification Georgia court. *See Southern Concrete Prods., v. L.A. Martin*, 126 Ga.App. 534, 191 S.E.2d 314 (1972).

There are other cases cited by both Holden and Sundance, some holding that repair costs were a sufficient measure of damages for O.C.G.A. § 11–2–714(2) purposes and others holding the opposite. Upon review of these cases, the Court concludes that the differences between them result not from utilization of different rules of law, but rather, from the application of the law in different factual settings.

Holden cites a number of cases for the proposition that repair costs are insufficient evidence for O.C.G.A. § 11–2–714(2) purposes. *See, e.g., Williams v. Dienes Apparatus, Inc.*, 200 Ga.App. 205, 407 S.E.2d 408 (1991); *Mumford v. Phillips*, 195 Ga.App. 782, 395 S.E.2d 45 (1990); *Fiat Auto U.S.A. v. Hollums*, 185 Ga.App. 113, 363 S.E.2d 312 (1987); *Morris v. Bonner*, 183 Ga.App. 499, 359 S.E.2d 244 (1987). While these cases might appear to state the proposition favorably to Holden, each one can be distinguished on its facts.

In *Williams*, the court stated that while the purchase price may establish one of the two figures needed to measure damages for breach of warranty, the plaintiff must also provide evidence of the value of the defective goods as accepted. *See* 200 Ga.App. at 208, 407 S.E.2d at 410. In that case, the court stated that the plaintiff had failed to establish such value. *Id.* The case did not discuss, however, whether repair costs would be sufficient evidence to aid in the determination of the value.

In *Mumford*, the court reversed a lower court award for breach of warranty stating that "[t]here was no evidence to authorize a finding that $5,000 represents the difference between the value of the motor as accepted and its value had it in fact been 'new.'" 195 Ga.App. at 783, 395 S.E.2d at 46. Although the original $5,000 award may have, in some way, represented repair costs, the court's

holding was primarily based upon its concerns regarding the accuracy of the $5,000 figure, not the adequacy of repair costs as an appropriate measure.

In *Fiat*, the court held that "[t]he value of the [good] at acceptance cannot be extrapolated from the costs incurred by [the buyer] for repairs since several repairs were repeated." 185 Ga.App. at 116, 363 S.E.2d at 315. That case does not stand for the proposition that repair costs can never be good evidence as to the value of a good at acceptance.

In *Morris*, the issue was not Uniform Commercial Code damages, but rather, it was property damage to an automobile as a result of a collision. In automobile collision cases, there are two ways to prove damages:

(1) By showing the difference between the fair market value of the vehicle before and after the collision; and (2) Proof of the necessary repairs that are the direct and proximate result of the collision and which represent the reasonable value of labor and material used for the repairs. However, this is subject to the proviso that the aggregate of the repair costs, together with hire on the vehicle while rendered incapable of being used, and the value of any additional permanent impairment, does not exceed the market value of the car before the damage with interest.

*Morris*, 183 Ga.App. at 501, 359 S.E.2d at 246 (citations omitted). The court held that "[i]n view of the absence of any evidence showing the market value of plaintiff's vehicle before the collision in the case sub judice, plaintiff has failed to carry her burden under either of the above formulas." *Id.* By not providing evidence of the value before the collision, the plaintiff was unable to utilize the first formula. As to the second formula, however, the reason that the plaintiff did not succeed is not because repair costs are an inadequate measure, but instead, because she needed to establish the value of the car before the collision so that the court could make certain that the repair costs did not exceed that value.

Likewise, the cases cited by Sundance do not clearly establish its position that repair costs are an adequate measure of damages under O.C.G.A. § 11–2–714(2). *See, e.g., Hutto v. Shedd*, 181 Ga.App. 654, 353 S.E.2d 596 (1987); *Kuhlke Constr. Co. v. Mobley, Inc.*, 159 Ga.App. 777, 285 S.E.2d 236 (1981); *Southern Concrete Prods. v. L.A. Martin*, 126 Ga.App. 534, 191 S.E.2d 314 (1972); *Davis–Pickett Chevrolet v. Collier*, 106 Ga. App. 660, 127 S.E.2d 923 (1962). *Hutto* and *Mobley* both hold that repair costs are an adequate measurement of damages, but they are of limited use here because they were not Uniform Commercial Code cases as the actions were based on construction defects rather than defective goods. *Southern Concrete Prods.* was a UCC case which held that repair costs were an adequate measure of damages caused by defective bricks. *See* 126 Ga.App. at 537, 191 S.E.2d at 316. However, this case is not persuasive because the seller had made an express promise that "[it] would either correct or repair the defective material in order that it would conform to the contractual agreement." *Id. Davis–Pickett Chevrolet* was, likewise, a case where the seller had promised to repair defects by the terms of an express warranty. Moreover, the case was decided before the codification of the UCC in Georgia.

Unfortunately, because of the factual variations in the various written opinions cited by the parties and as well as those located by the Court's own research, there is no controlling case authority. It does appear, however, that the basic rule followed by Georgia courts is that the measure of damages for breach of warranty is to be determined by the formula in O.C.G.A. § 11–2–714(2).[4] The question of whether repair costs can satisfy that proof requirement depends entirely on the sufficiency and reliability of the evidence presented in the context of the case at hand. One treatise explained this concept well by stating the following:

While repair and replacement provide useful methods for determining damages in most warranty cases, it must be kept in mind that costs of repair or replacement are not the test of damages but only pro-

---

4. The complete text of O.C.G.A. § 11–2–714 is quoted in note 2, *supra*.

vide evidence of what the ordinary damages are. The test in all cases is the difference between the value of the goods as accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. Repair and replacement costs provide evidence to prove the difference between the value of the goods as accepted and the value they would have had if they had met the warranty, and this evidence will be relatively strong or weak depending on the circumstances surrounding repair or replacement. Obviously, a repair or replacement made in a commercially reasonable manner is entitled to much more weight than one that is not so made.

William D. Hawkland, *Uniform Commercial Code Series* § 2–714:04 (1996).

In this case, Sundance provided evidence of costs of repairs to the equipment it purchased from Holden. The Court considered this evidence and found the reasonable costs of repair to be $7,292.87. This amount was determined to be sufficient proof of the difference between the value of the goods as accepted and the value that they would have had if they had been as warranted. The Court reaffirms that holding.

## ATTORNEY'S FEES

Holden also seeks reconsideration of the Court's decision to award Sundance attorney's fees in the amount of $2,688.50 as consequential damages. *See* O.C.G.A. § 11–2–714(3) ("In a proper case any incidental and consequential damages … may also be recovered."). Upon reconsideration, the Court holds that this award was erroneous.

■ Attorney's fees are generally not recoverable absent an express contractual provision or a statutory mandate. *Alterman Foods v. G.C.C. Beverages*, 168 Ga.App. 921, 923, 310 S.E.2d 755, 757 (1983). There was no contractual provision regarding attorney's fees since there was no written contract. Georgia statutory law provides the following:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specifically pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13–6–11. No evidence or allegations have been offered which would warrant the application of the provisions of this statute.

■ Sundance contends that it is entitled to the award of attorney's fees as consequential damages under O.C.G.A. § 11–2–715(2). That section states the following:

(2) Consequential damages resulting from the seller's breach include:

(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) Injury to person or property proximately resulting from any breach of warranty.

As support for its assertion, Sundance cites the *Alterman Foods* case. There, the Court of Appeals of Georgia held that the buyer could recover the expenses of litigation under the authority of O.C.G.A. § 11–2–715. Specifically, the court stated that it would be most fair to

allow the buyer of defective merchandise to recover from the seller of that merchandise its litigation expenses incurred in a suit against the buyer by a third party when such litigation resulted from an incident caused by the same defective merchandise. The seller in situations like those in the present case is well aware of the fact that the buyer of its merchandise will resell those goods to the general public and that litigation inherently follows a mishap caused by defective merchandise.

*Alterman Foods*, 168 Ga.App. at 924, 310 S.E.2d at 758. The facts in this case are distinguishable from *Alterman Foods*. The plaintiff in that case sought recovery of fees incurred in defending a separate action brought by a third party.

There are no published cases in Georgia where attorney's fees were awarded as con-

sequential damages to compensate for litigation costs incurred through a wholesale buyer's prosecution of a breach of warranty action against a seller. Such an award in this case would be unprecedented and improper, as it would not be in accordance with any statute or case holding. Thus, the Court's award of attorney's fees at the close of the April 29, 1997 hearing was in error and should be vacated.

## NOTICE OF DEFECTS

Holden argues that Sundance is barred from recovery because it did not give proper notice of the defects. After acceptance, "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." O.C.G.A. § 11–2–607(3)(a). The communication from Sundance to Holden provided the requisite notice within a reasonable time. Holden does not present any argument sufficient to persuade the Court to alter this finding of fact or the conclusions of law drawn from it.

## WAIVER OF OBJECTION

Sundance contends that "Holden waived its objections to Sundance's evidence regarding damages and right to recover attorney's fees under the Uniform Commercial Code by failing to assert these objections at trial." (Supplemental Brief In Opposition To Motion For Reconsideration at 2.) The Court concludes that Holden did not waive its right to object to the use of evidence regarding repairs to prove damages, nor did it waive its right to object to the recovery of attorney's fees.

At trial, Holden plainly asserted its position that repair costs were not the proper measurement of damages for breach of warranty. By determining that the reasonable cost of repairs was the proper measure of damages in this case, the court rejected this argument. Nonetheless, this ruling adverse to Holden's position does not change the fact that Holden did raise the issue. Furthermore, any alleged failure on the part of Holden to object to the use of the repair evidence at trial would not amount to a waiver of its right to seek reconsideration of the Court's decision as to the weight to be given to the evidence.

In addition, although no specific objection to the award of attorney's fees was raised by Holden, the Court will not deem the lack of such an objection to be a waiver of the right to object to the award of fees. Holden never consented to any recovery by Sundance. There is no showing of any reliance on a waiver. The failure of Holden's counsel to argue the issue does not amount to a waiver. It now appears to the Court that the award is contrary to the law. This Motion For Reconsideration is an appropriate procedure to seek relief from that error.

An order in accordance with this opinion will be entered on this date.

## ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that Motion for Reconsideration by Holden Machinery ("Holden") is DENIED as to the sufficiency of repair costs as the measure of damages for the breach of implied warranties; and it is hereby further

ORDERED that the motion is SUSTAINED as to the award of attorney's fees with the result that the Court's order to offset Holden's claim by $2,688.50 in attorney's fees incurred by Fried Group, Inc. d/b/a Sundance Tractor & Mower ("Sundance") is VACATED; and it is hereby further

ORDERED that Holden's claim against Sundance's bankruptcy estate shall be increased by $2,688.50, resulting in a net claim of $25,754 .57;[1] and it is hereby further

ORDERED that the Court's Order dated May 27, 1997 continues in full force and effect except as amended herein above by this order.

---

1. The net claim of $25,754.57 is calculated by adding the previously deducted attorney's fees of $2,688.50 to Holden's claim of $23,066.07 as established by the written Order entered on May 27, 1997.