## 69142. HORTMAN v. CANTRELL et al.

(326 SE2d 779)

BIRDSONG, Presiding Judge.

Breach of Contract. The Cantrells experienced a house fire which totally destroyed their home apparently leaving only a foundation. Fire insurance covered the loss up to a total amount of $55,000. The Cantrells decided to rebuild their house on the same foundation, intending to clone the original house as nearly as possible. The Cantrells sought the bids and assistance of several contractors but settled upon Richard Hortman doing business as Hortman Home Builders and Hortman Home Menders. Hortman prepared a detailed bid based upon the design of the house as originally built and upon the structure next door which was built from the same design. The itemized bid submitted by Hortman totalled up to over $59,000 but inasmuch as the total insurance coverage was only $55,000, Hortman agreed to restore the burned house for a contract price of $55,000. During the construction of the house, Hortman apparently upgraded the lighting fixtures, the kitchen cabinets, the carpeting and modified the roof line in a slightly more costly construction design. Evidence was offered without objection that the house, as ultimately completed by Hortman and accepted by the Cantrells, had a fair market value of $62,000-67,000.

Before the completion of the reconstruction, the Cantrells became dissatisfied with some of the work done on the interior and exterior of the house. There was evidence that some panels of the exterior siding had to be replaced. These were not properly stained. There was a warped or buckled truss in the attic support which caused a wave in the ceiling. Likewise, there was a warped stud in a wall that caused a bulge. Hortman had repeatedly redone certain wall board spackling without satisfying the Cantrells. Subsequently, an agreement had been reached to wallpaper over some of the wallboard that caused the dissatisfaction. However in view of additional space to be papered, Hortman ordered an insufficient amount of the wallpaper, and the job was only partially completed because Hortman experienced a temporary back order problem. Some interior painting was not completed to the satisfaction of the Cantrells. However, in spite of this rather lengthy punch list, there is no contention that the house was not built according to the specifications of the contract. The Cantrells moved into the house, while negotiating with Hortman for the completion of the cosmetic touches. The house had received a successful county building inspection, and it is not disputed that the discrepancies raised by the Cantrells did not render the house unusable or even unlivable.

After several unsuccessful attempts to correct these deficiencies, the Cantrells declared the contract breached and refused to allow

Hortman or his workmen further access to the interior of the house. The Cantrells obtained estimates of what it would cost to finish the house in the condition promised in Hortman's contract and offered evidence that it would cost $6,553 more to finish the house properly. The Cantrells then brought this complaint against Hortman seeking $10,000 total damages arising out of the breach of the contract. Hortman filed a cross complaint seeking approximately $1,800 as expenses incurred by Hortman but not covered by the agreement. The jury returned a verdict in favor of the Cantrells for $8,000. Hortman brings this appeal enumerating several alleged errors. *Held*:

1. In his first enumeration of error, Hortman urges there is an insufficiency of evidence to support the verdict of $8,000. It is agreed by both parties and the jury was so charged that the acceptable method of computing damages where an express contract is alleged to have been breached by a building contractor is the difference in the fair market value of the home as completed and the value of the home as it would have been had it been completed in accordance with the contract. *Classic Restorations v. Bean*, 155 Ga. App. 694, 700 (272 SE2d 557). The bid submitted by Hortman reflected that the value of the material and labor to be used in the reconstruction of the house was $59,291.36. On the other hand, both parties agreed that the house was to be reconstructed for a cost price of $55,000. Though cost price is not determinative of market value, it can furnish probative evidence pointing to value. See *Corvair Furniture Mfg. Co. v. Bull*, 125 Ga. App. 141 (8) (186 SE2d 559). It is always relevant as a circumstance to be considered with all other circumstances to establish value. *Sentry Ins. v. Henderson*, 138 Ga. App. 495, 498 (226 SE2d 759). Thus, the only relevant evidence established that Hortman agreed to furnish a house worth $59,291.36 when delivered and apparently actually constructed a house with a market value of $62,000-67,000. If we accept then the difference between the value of the house as promised (the contract promise) and the value of the house as delivered, it is apparent that the Cantrells realized a several thousand dollar windfall instead of suffering damages. From such a position, it is difficult to articulate in positive terms damages suffered by the Cantrells when the accepted rule for and the situation normally occurring giving rise to assessment of damages is based upon a situation where the delivered product is worth substantially less than the promised product value. *Windsor Forest v. Rocker*, 115 Ga. App. 317, 322 (154 SE2d 627).

As pointed out by the Cantrells, the difference between the house as promised and the house as delivered is not the exclusive way to establish damages. *Rose Mill Homes v. Michel*, 155 Ga. App. 808 (1) (273 SE2d 211). An analysis of that case and its progenitors cited therein shows the court applied a rule of logic. The case stands for the

proposition that where an expert gives an opinion that the house as delivered has a market value less than the fixed value promised in the contract, the amount of damages based upon the lower value arising because of the unfinished product becomes a matter of the expert's opinion. Thus to obviate the uncertainty of opinion value, the courts have held that a more certain way to ascertain damages is to take the value as promised and subtract the itemized costs of work required to bring the house up to the promised value. *Mabry v. Henley*, 123 Ga. App. 561, 567 (181 SE2d 884). In the instant case, had there been evidence that the home was not completed or unlivable and its value in that condition was less than $59,290, the jury could have started with the contract value (the bid value of $59,200) and subtracted from that value the costs of completing the promised work (approximately $6,000-7,000). The opinion evidence of the lesser value of the house as delivered or the itemized costs would have been equally acceptable, with cost items probably more reliable to establish damages. In view of the charge of the court, however, that rule has no application. The only evidence before the jury to satisfy the rule demanded by the charge of the court that damages had to be based upon the difference between the higher promised value and the lesser actual (delivered) value was that the actual value was several thousand dollars more than the promised product of the contract.

Because the actual value of the delivered house was shown to be from $7,000-12,000 more than the promised value, it is impossible to determine from what the jury subtracted (if it did) to ascertain the basis of the jury's award. Possibly because the Cantrells sought a $10,000 verdict and Hortman an $1,800 counterclaim, the jury offset one against the other to reach its $8,000 verdict (as authorized by the charge of the court). However, we, as was the jury, are required to apply the rule applicable to damages arising out of a home building contract. The difference between the house as promised and the house as delivered was shown by unrebutted evidence to be several thousand dollars more than the promised value. Applying that rule, we must conclude that the Cantrells have failed to establish ascertainable damages. (Moreover, if we applied the evidence as suggested by the Cantrells, they would obtain a $62,000-67,000 home for an out-of-pocket expense of $47,000-$55,000 less the $8,000 verdict). Thus the jury must be concluded to have reached their assessment of damages based upon a vague and uncertain premise, something a jury may not do. See *Hayes v. Flaum*, 138 Ga. App. 787 (227 SE2d 512); *Development Corp. of Ga. v. Berndt*, 131 Ga. App. 277, 278 (205 SE2d 868). Under these circumstances the evidence does not support the verdict of the jury. We conclude the motion for directed verdict properly should have been granted in favor of Hortman.

2. In view of the disposition of this case, the remaining enumera-

tions of error are rendered moot. Should a new trial occur, we assume the asserted errors will not again arise.

*Judgment reversed. Carley, J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED JANUARY 14, 1985 —
REHEARING DENIED FEBRUARY 4, 1985 —

*Joseph H. Fowler*, for appellant.
*Robert B. Edwards*, for appellees.