### 74417. RAY et al. v. STRAWSMA.
(359 SE2d 376)

BIRDSONG, Chief Judge.

The appellants Anthony and Brenda Ray contracted with the appellee Ron Strawsma (d/b/a Strawsma Construction Company) to build a house. The appellee built the house. The appellants moved into the house and lived in the house. The appellants refused to pay the appellee. This matter was tried before a jury and the jury found against them.

Strawsma Construction Company contended in its suit that the original contract price was $119,600; additions totalled $7,371.53; total contract price thus amounted to $126,971.53. Appellants paid Strawsma $95,000 before disengaging him, leaving a balance owed of $31,971.53, but their cost of completion was $5,148.00, leaving the "alleged balance" due Strawsma of $26,823.53. Appellants counterclaimed for repairs to a security alarm system allegedly damaged by Strawsma or his agents, and for latent defects not discovered or discoverable prior to termination date of the contract. Appellants' expert Clapp testified there were flaws and defects which could not be repaired such as out-of-plumb walls and unlevel floors; this witness testified that for $30,450 he might be able to raise the quality of the house from poor to average. Another witness, Dumas, attempted to testify as to diminution in value resulting from those defects that could not be repaired. The trial court refused to admit Dumas' opinion for the reason that diminution in value resulting from defects which could not reasonably be repaired is not probative of value because the measure of damages is "the difference in the value of the house as delivered by the plaintiff contractor and the value of the house as it ought to have been finished under the terms of the contract." See *Rose Mill Homes v. Michel*, 155 Ga. App. 808 (273 SE2d 211). Appellants complain of this and other alleged errors. *Held*:

1. The trial court erred in refusing to allow the witness Dumas to give his opinion of diminution in value resulting from defects which could not reasonably be remedied. It is true that the measure of damages in these cases of alleged breach by the contractor is the difference in the value of the house as completed by the contractor and the value of the house as it ought to have been finished under the terms of the contract. *Rose Mill Homes*, supra. However, this is the measure

of damages; but *proof* of such value difference is a different matter. This difference in value may be "illustrated" by the reasonable cost of repair of defects (id. p. 808; *Hutto v. Shedd*, 181 Ga. App. 654, 656 (353 SE2d 596)); that is, by deducting from the contract price the sum which would be required to complete the house according to the contract. *Rose Mill Homes*, supra. Thus, the "sum required to make the [building] conform to the specifications fixed by the contract" is generally the measure of damages (different in value as contracted for and as delivered), but the object of such evidence is "to enable the jury to reach a verdict reflecting the difference in value. . . . 'Value may be shown by the testimony of experts, or by other testimony as to the nature of the injuries sustained and as to the material and labor supplied; and testimony as to the actual cost is admissible, such cost being a circumstance which may be considered by the jury in determining such value, under their right to weigh all the facts and circumstances bearing upon that question, and to form their own judgment on the data in evidence.' [Cits.]" *Wilson v. Black*, 114 Ga. App. 735, 737-738 (152 SE2d 755).

The evidence offered by the defendant homeowners in this case showed that there were defects which could not be reasonably repaired, such as out-of-plumb walls and unlevel floors. The case of *Small v. Lee & Bros.*, 4 Ga. App. 395 (61 SE 831), involved a variance from the contract (defect) which could not be repaired. It was complained that the jury charge excluded from the consideration of the jury "what it would take to make the house as built conform to the house as contracted for." Id. p. 396. We concluded the measure of damages "must necessarily vary with the facts of the particular case and be determined according to these facts." Id. p. 397. We held: "Where the defects in the house as constructed may be remedied at a reasonable expense, it would be proper, we think, to deduct from the contract price the sum which it would cost to complete it according to the requirements of the plans and specifications. [Cit.] If the contractor has built a structure substantially adapted to the purposes for which it was built, and of which the owner is in the use and enjoyment, but the defects of the structure can not be made to conform strictly to the requirements of the contract, except by an expenditure which would deprive the contractor of adequate compensation for his labor and materials, justice and equity would require the adoption of another measure of damages." Id. p. 397.

We think this rule is correct whether the house is "substantially adapted" to its purpose and the owner is getting the benefit of it, as in *Small v. Lee*, or whether it is allegedly "worthless." It has some value, if only for scrap (see *Hutto v. Shedd*, supra, p. 656), and that value may obviously be whatever it is worth as a result of the irremediable defects. The owner should not have the benefit of that value,

however low, by recovering the entire contract price; the property's value as diminished by irremediable defects should be deducted from the value of the house as it should have been completed according to the contract.

This is not a new rule, nor is it necessarily limited to breach of contract cases. See *Georgia-Car. Brick &c. Co. v. Brown*, 153 Ga. App. 747, 756 (266 SE2d 531). In *Allgood Rd. &c. Church v. Smith*, 173 Ga. App. 28, 29 (325 SE2d 392), which involved damage to property due to negligence, we said: " 'Questions of value are peculiarly for the determination of the jury, where there is any data in the evidence upon which the jury may legitimately exercise their "own knowledge and ideas." [Cit.]' . . . The general rule for the measure of damages involving real property is the diminution of the fair market value of the property and/or the cost of repair or restoration. See generally Eldridge, Ga. Pers. Inj. & Prop. Dam. — Damages, §§ 8-2 and 8-3." See also *Mercer v. J & M Transp. Co.*, 103 Ga. App. 141, 143 (118 SE2d 716), where we said: " 'As a general rule the measure of damages in actions for injuries to real property is the difference in value before and after the injury to the premises.' " If the damage cannot be repaired, it seems pointless error to insist the value be determined by cost of repair.

The trial court correctly charged the jury in this case that as to the defendants' counterclaim the measure of damages was "the difference in value of the house as finished by the plaintiff and the value of the house as it ought to have been finished under the terms of the contract." But, since there was evidence of defects that could not be reasonably repaired, the proof was not limited to the contract price less cost of repair, but properly could be shown by the diminution of value resulting from these defects that could not be repaired. *Small*, supra; *Allgood*, supra.

The trial court erred in refusing to let the witness Dumas give his opinion of such diminution. *Rose Mill Homes*, supra.

However, we are unable to detect how this error harmed the defendant owners. The defendants additionally showed evidence that damage was so extensive it would cost more than $30,450 to repair any defects, if they could be repaired, and still the jury failed to render a verdict for the defendants on their counterclaim or the contractor's claim. There was evidence that after the owners disengaged the contractor, the house could be completed according to the terms of the contract for $8,000, and this is what the jury found, deducting this amount from the balance owed and giving a verdict for $23,938.84 to the contractor. Therefore, as a matter of fact the exclusion of Dumas' testimony as to "diminution of value resulting from defects that could not be repaired" was harmless, since the jury found the defects could be repaired.

2. Appellants are not entitled to a reversal of the judgment based on excluded jury charges. The trial court correctly charged as to the consideration of expert testimony, and as to the measure of damages; the court charged correctly that if any defects could be reasonably remedied, such cost could properly be deducted from the contract price. The trial court did not charge that damages could be assessed based on the diminution of value resulting from defects that could not be reasonably repaired; such a charge was authorized in this case but as we indicated in Division 1 was harmless.

3. The trial court did not err in refusing a directed verdict to the Rays on the contractor's claim for breach of contract, which appellants based on failure of the contractor to prove damages under *Williams v. Kerns*, 153 Ga. App. 259 (265 SE2d 605). Appellant owners contend this being a case which the jury evidently believed involved a breach by the owners to pay, the contractor is allowed only his expenses and his profit, but, say appellants, " 'in no event to exceed the contract price.' " Id. p. 263. However, appellants evidently concede, as the jury found, that the contract price was increased by additions totaling $7,371.53. The contractor's profit was figured in the total contract price and the jury's award reflects this figure. Appellants were not entitled to a directed verdict which in effect would have given them the $7,371.53 additions for free.

4. Appellants made claim for a defective security alarm system. Evidence showed the alarm system was installed by a third party. The appellants' claim for damages is based on the assertion that the entire contract was a "turn-key" job. However, appellants have made no showing to this court of any evidence showing causation between the malfunction of the system, whatever it is, and any work done or not done by the appellee. The general assertion appears to be that a "turn-key" job constitutes a guarantee. A "turn-key" job has been defined as one which is "technically a contract of sale. The developer (or seller) obtains his own funds for construction. There are no progress payments or liquidated damages provisions. The contractor does not have to furnish a performance bond, and the arrangement therefor has advantages for minority contractors who may lack substantial bonding capacity. The purchaser agrees to accept and pay for the units when they are completed and habitable, i.e., when the purchaser can 'turn the key' and move in." *First Nat. Bank of Aberdeen v. Indian Indus.*, 600 F2d 702, 704 fn. 3 (8th Cir. 1979). But "turn-key" or not, the owner still must show a defect and the failure to perform the contract in a skilful, careful, diligent and workmanlike manner. See *Blue v. R. L. Glosson Contracting*, 173 Ga. App. 622, 623 (327 SE2d 582). The evidence in this case certainly does not show this contract was a "turn-key" job and in any case the evidence does not demand a finding that there was a defect in the security system for which the

contractor was liable. OCGA § 9-11-50. The trial court did not err in refusing to direct a verdict for the appellant owners on this issue.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 18, 1987 —
REHEARING DENIED JULY 10, 1987 — 

*Peter J. Rice, Jr.*, for appellants.
*E. Angela Emerson*, for appellee.