A00A1656, A00A1657. RYLAND GROUP v. DALEY et al.; and vice versa.

(537 SE2d 732)

ELDRIDGE, Judge.

This is an appeal and cross-appeal on a claim and counterclaim wherein a Fulton County jury found for plaintiff homeowners Donna Jones Daley and Raymond Daley ("Daleys") against defendant seller/builder Ryland Group, Inc. ("Ryland") on their complaint for breach of a building contract, negligent construction, and breach of warranty; the jury found for Ryland on its counterclaim alleging breach of an agreement entered into at closing regarding the installation of granite countertops in the kitchen of the Daleys' house. For the reasons that follow, we affirm the trial court's partial judgment notwithstanding the verdict ("j.n.o.v.") and denial of a motion for new trial.

Viewed in a light to uphold the jury's verdict,[1] Ryland built the Daleys' "Master's Collection" house pursuant to a contractual agreement entered into in June 1994. The contract was amended in order to include the purchase and installation of Baltic Brown granite countertops in the kitchen of the house. The countertops were installed at the completion of construction so that they would not be damaged by the subcontractors working on other parts of the house. The Daleys saw the countertops for the first time the day before closing. Ryland had installed three-centimeter-thick Dakota Mahogany countertops with granite overhangs on the edges of the counters. The

---

[1] *Stratton Indus. v. Northwest Ga. Bank*, 191 Ga. App. 683, 686-687 (2) (a) (382 SE2d 721) (1989).

color was unsatisfactory to the Daleys and not as specified. Ryland agreed that the countertop installation was incorrect because of the color; however, rather than delay closing, Ryland and the Daleys agreed to hold in escrow $8,000 out of the purchase price, pending installation of Baltic Brown granite countertops.

The parties closed on the house in September 1994. The agreement regarding reinstallation of the proper color countertops was reflected in a document generated at closing, and $8,000 was placed in escrow pending release by satisfactory installation. Ryland reinstalled the countertops in November 1994. The color of the granite was correct, but the granite was two centimeters thick, and there were no granite overhangs on the edges of the counters. The Daleys were dissatisfied with the second installation. In January 1995, Ryland refused to reinstall the countertops a third time and informed the Daleys that any changes between the first and second granite installation were consistent with the blueprint specifications and, thus, not in violation of contract. The Daleys would not agree to the release of the escrowed funds until the kitchen countertops were reinstalled using three-centimeter-thick Baltic Brown granite with granite overhangs on the edges consistent with the first installation.

Meanwhile, during the early months of 1995, the Daleys compiled a punch list of repairs, replacements, and defects in the construction of the house, the correction of which was Ryland's responsibility pursuant to contract. This included serious defects in the installation of the hardwood floors on the first floor. Ryland took no significant action on any repairs to the Daleys' house.

In July 1995, the Daleys asked a friend who is an attorney to aid them in obtaining repairs to the house pursuant to contract. Negotiations occurred between Ryland and the Daleys' first attorney throughout 1995 and into 1996. During this time, Ryland made small repairs to the residence, but finally in late 1996, Ryland informed the Daleys that "there would be no movement with regard to the other defects and repairs that [the Daleys] noted until [they] resolved the counter top issue."

In February 1997, the Daleys hired a litigation attorney. In early spring 1997, a structural engineer was engaged and, over two separate visits, did a complete inspection and found numerous structural defects, as well as other defects both related and unrelated to the structural problems with the house. An "Engineer's Estimate" was generated, which included the estimated cost to repair the construction defects. The total cost to repair was $40,765. The Daleys filed suit October 1, 1997, alleging breach of contract, negligence, breach of warranty, and requesting attorney fees. Ryland counterclaimed for the $8,000 in escrow, alleging breach of the agreement reached at closing regarding the kitchen countertops.

The jury found for the Daleys on all grounds of their complaint and awarded the Daleys $70,800 in damages and $22,500 in attorney fees. The jury found for Ryland on its counterclaim and awarded Ryland $8,000. Pursuant to election, the trial court entered judgment on the jury's verdict as to the breach of contract claim and the award of $70,800 in damages and $22,500 in attorney fees. The trial court also entered judgment on the jury's verdict as to Ryland's counterclaim and the award of $8,000. Later, on Ryland's motion for j.n.o.v., the trial court affirmed the jury's award of attorney fees to the Daleys but reduced the damage award to $41,000 based on the actual cost to repair estimate as testified to by the Daleys' structural engineer during trial.

In Case No. A00A1656, Ryland appeals the trial court's judgment entered on the jury's verdict for the Daleys on their breach of contract claim and the award of attorney fees. In Case No. A00A1657, the Daleys appeal from the trial court's order on motion for j.n.o.v. reducing the damage award.

### Case No. A00A1656

1. (a) Ryland contends that the Daleys failed to offer proof of the proper measure of damages. Ryland argues that "difference in value" is the only proper measure of damages for defective workmanship in a breach of contract action, while the Daleys relied upon cost to repair/correct defects in order to measure damages for breach of contract, negligent construction, and breach of warranty. However, in its brief, Ryland also concedes that "difference in value may be shown by evidence of the reasonable cost of correcting defects." Of course, where the action is for breach of contract only, the difference between the value of the house as finished and the value of the house as it should have been finished, i.e., the benefit of the bargain, is a proper measure of damages, but it is by no means the exclusive measure.[2] Indeed, "[g]enerally, the proper measure of damages for defective workmanship would be the cost of repair of the defect" when claiming negligent construction, as well as when claiming breach of contract.[3] Accordingly, there was no error in the method of measuring damages

---

[2] *Jim Walter Homes v. Strickland*, 185 Ga. App. 306, 310 (363 SE2d 834) (1987); *Kuhlke Constr. Co. v. Mobley, Inc.*, 159 Ga. App. 777 (285 SE2d 236) (1981); *Holder v. J. F. Kearley, Inc.*, 153 Ga. App. 843, 846 (267 SE2d 266) (1980); cf. *Pinnacle Constr. Co. v. Osborne*, 218 Ga. App. 366, 367 (2) (460 SE2d 880) (1999) (suit to correct contract construction defects).

[3] *Adamson Co. v. Owens-Illinois Dev. Corp.*, 168 Ga. App. 654, 657 (309 SE2d 913) (1983); *Kuhlke Constr. Co. v. Mobley, Inc.*, supra at 780; *Clements v. Barnes*, 197 Ga. App. 120, 121 (3) (397 SE2d 560) (1990); *Savannah Indus. Constr. &c. v. Sumner*, 189 Ga. App. 319, 320 (375 SE2d 486) (1988); see also *Armstrong Transfer &c. Co. v. Mann Constr.*, 217 Ga. App. 538, 543 (7) (458 SE2d 481) (1995).

in this case.

(b) We also find no merit to Ryland's contention that the cost to repair the defects in the Daleys' residence should have been measured at the time of the delivery of the new residence in September 1994, i.e., at closing. The record shows that the cost to the Daleys to repair defects in the home — defects for which Ryland was responsible under the contract — did not become a relevant issue until Ryland flatly refused to repair them. Ryland's refusal occurred long after the 1994 closing on the house; any increase in the cost to repair the defects because of such delay is attributable to Ryland, arises naturally from Ryland's breach of contract, and was in the contemplation of the parties to the contract.[4]

Further, to require the cost to repair method of evaluating damages to be estimated only at the time of "delivery" on a new home would preclude recovery/repair under a contract for defective workmanship that only becomes apparent with time. We will not so reward a careless builder/seller nor so penalize a nonclairvoyant new home buyer, absent express contract language so limiting the damages.

(c) Ryland's contention that the trial court erred in failing to charge the jury that repair costs must be estimated when they are discovered is rendered meritless by our decision in Division 1 (b).[5] There was no error in the trial court's charge on the cost to repair method of evaluating damages.

2. Entry of judgment on the jury's verdict in favor of Ryland on its counterclaim renders moot any claim of error regarding the trial court's failure to direct a verdict thereon.[6]

3. Ryland claims that the evidence was insufficient to support the award of attorney fees in this case because the jury's return of a verdict in Ryland's favor on its counterclaim demonstrates a bona fide issue in controversy. We disagree.

If there is bad faith in the making *or performance* under the contract, "attorney fees are authorized regardless of whether a bona fide controversy otherwise existed between the parties. [Cit.]"[7]

Further, whether or not the defendant/appellant acted in bad faith in its contractual relations is an issue for the jury to determine. Bad faith warranting an award of attorney

---

[4] *Adamson Co. v. Owens-Illinois Dev. Corp.,* supra at 656-657.

[5] Ryland's reliance on termite infestation cases is misplaced in this case involving defective workmanship.

[6] *Hardy v. Tanner Med. Center,* 231 Ga. App. 254, 258 (10) (499 SE2d 121) (1998). We also note, however, that sufficient evidence existed so that denial of the motion for directed verdict was not error. OCGA § 9-11-50 (a).

[7] *Parks v. Breedlove,* 241 Ga. App. 72, 73 (1) (526 SE2d 137) (1999).

fees must have arisen out of the transaction on which the cause of action is predicated. *It may be found in defendant's carrying out the provisions of the contract*, that is, in how defendant acted in his dealing with the plaintiff. Bad faith other than mere refusal to pay a just debt is sufficient, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. So defendants can be held liable for attorney fees if they committed the breach in bad faith.[8]

The standard of review of an award of attorney fees under OCGA § 13-6-11 is whether there is any evidence to support the award.[9]

Construed to support the verdict, the evidence at trial showed that Ryland was obligated under the contract to fix the numerous defects discovered in the construction of the Daleys' house, *regardless* of the kitchen countertops controversy. Evidence showed that Ryland repaired the same and similar construction defects in other "Master's Collection" houses it sold and built. But Ryland refused to make such repairs to the Daleys' house, despite its contractual obligation to do so, which obligation survived the closing. Ryland attempted to force resolution of the kitchen countertops issue in its favor as a condition precedent to performing repairs to the other defects in the Daleys' house, even though the existence of a controversy over the kitchen countertops in no way relieved Ryland of its contractual obligation to repair such other defects after closing. Because the Daleys would not agree to the release of the escrowed funds, Ryland forced them to resort to litigation in order to secure the repairs that were due under the contract and that Ryland knew were due under the contract. This evidence provides a sufficient basis from which the jury could determine that Ryland acted in bad faith in its dealings with the Daleys under the contract and in its performance under the terms of the contract.[10] Accordingly, there was no error in submitting the issue of attorney fees to the jury or in its subsequent award thereon.[11]

4. Next, Ryland challenges the sufficiency of the evidence in support of the amount of the award of attorney fees. Here, the Daleys'

---

[8] (Citations and punctuation omitted; emphasis supplied.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 856-857 (1) (c) (501 SE2d 30) (1998).

[9] See *C & S Trust Co. v. Hicks*, 216 Ga. App. 338, 340 (2) (454 SE2d 207) (1995).

[10] *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 402 (3) (526 SE2d 82) (1999).

[11] We will not consider the affidavit of the jury foreman submitted by the Daleys during the motion for j.n.o.v. The affidavit attempts to impeach the jury's verdict in favor of Ryland on its counterclaim by explaining that the jury did not intend to find for Ryland on the *merits* of its counterclaim, but only to award it the $8,000 held in escrow, since the jury awarded the Daleys $8,000 to replace the kitchen countertops in its total award on the Daleys' breach of contract claim. "The affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA § 9-10-9.

attorney testified at trial as to the expenses involved in litigation and the reasonableness of his fees in light of his experience and the litigation history of the case. "It is well established that a party's attorney himself is competent to testify as to his opinion on reasonable fees."[12] Using a computer printout of "every minute spent on the case[,]" the attorney "explained how [he] computed the amounts attributable to this . . . litigation, and was cross-examined by opposing counsel."[13] During cross-examination, opposing counsel utilized the same detailed billing record to inquire into the specifics of hours billed, rates, and the associates who worked on the case. The Daleys' attorney testified as to his personal knowledge of work done on this case by associates with the attorney's firm. Further, the jury found for the Daleys on all grounds of their complaint, and consequently, there is no issue regarding the segregation of hours that are recoverable from those hours not recoverable as to the issues raised by the Daleys, issues which also encompassed the substance of Ryland's counterclaim.[14] Under such circumstances, we find the evidence sufficient to support the award made by the jury.

5. The trial court held Ryland in contempt for wilfully violating its prior order compelling discovery as to all other Ryland "Master's Collection" homes with reported defects.[15] In so doing, Ryland does not challenge the sufficiency of the evidence in support of the contempt order, but instead contends that a finding of contempt was improper without a hearing. We do not agree. Under OCGA § 9-11-37 (b) (2) (D), a hearing is not required before contempt may be found for the wilful violation of an order compelling discovery: "The trial court is not required to hold a hearing on the issue of wilfulness in every case. Such a requirement serves no purpose where the trial court, as here, can otherwise determine wilfulness on the part of the party against whom the sanctions are sought."[16] Accordingly, this enumeration of error is meritless.

6. Ryland's counsel commented to the jury during closing that the defects in the Daleys' hardwood floors could have been fixed with no cost to any party. Pursuant to objection, the trial court recharged the jury that counsel's comment was inappropriate and to disregard

---

[12] (Citation and punctuation omitted.) *Campbell v. Bausch*, 195 Ga. App. 791, 792 (2) (b) (395 SE2d 267) (1990).

[13] (Punctuation omitted.) *Southern Co. v. Hamburg*, 233 Ga. App. 135, 137-138 (503 SE2d 383) (1998) (Eldridge, J., concurring specially).

[14] Id. at 139. The Daleys' attorney testified at trial that all issues involved in the litigation arose from the same set of facts and circumstances and thus could not be separated out; the Daleys' breach of contract claim factually encompassed Ryland's counterclaim for the escrowed $8,000.

[15] See OCGA § 5-6-34 (d).

[16] (Citation and punctuation omitted.) *Toles v. G & K Svcs.*, 230 Ga. App. 452, 453-454 (2) (496 SE2d 550) (1998).

it. Ryland claims error in this recharge. "A trial court is vested with broad and sound discretion in the correction of improper or inflammatory argument; the trial court's election to give the jury a curative instruction will not be disturbed on appeal absent an abuse of discretion."[17] In that regard, the issue of replacing the Daleys' defective hardwood floors was the subject of a motion in limine prior to trial. The trial court granted the motion because the instant proceeding was for money damages, and thus replacement of the floor — free or otherwise — was an irrelevant, equitable consideration. Ryland's comment during close about replacement of the floor violated the trial court's appropriate ruling on the motion in limine and could have caused confusion regarding the proper measure of damages in this case. Accordingly, we find no abuse of discretion in the trial court's recharge to the jury.

### Case No. A00A1657

7. The Daleys contend that the trial court erred in reducing the amount of the jury's $70,800 award of damages to $41,000, i.e., the actual cost to repair the defects in the house as testified to at trial by the Daleys' structural engineer.

The general rule for the measure of damages involving real property is the diminution of the fair market value of the property and/or the cost of repair or restoration, but limited by the fair market value at the time of the breach or tort.[18]

> The measure of damages in these cases of alleged breach by the contractor is the difference in the value of the house as completed by the contractor and the value of the house as it ought to have been finished under the terms of the contract . . . [,] but *proof* of such value difference is a different matter. This difference in value may be illustrated by the reasonable cost of repair of defects.[19]

When defects cannot be reasonably repaired, proof is not limited to the cost of repair, but properly can be shown by the diminution in market value resulting from the defects that cannot be repaired.[20] For either method of damages, the fair market value of the improved realty at the time of breach must be proven, because the plaintiff is entitled only to the benefit of the bargain or to be made whole and

---

[17] *Bogan v. State*, 206 Ga. App. 696, 700-701 (6) (426 SE2d 392) (1992).
[18] See generally Eldridge, Ga. Personal Injury & Property Damage — Damages, §§ 8-2 and 8-3; *Ray v. Strawsma*, 183 Ga. App. 622, 623 (1) (359 SE2d 376) (1987).
[19] (Citations and punctuation omitted; emphasis in original.) Id.
[20] Id. at 624.

not to recover a windfall.

Here, however, the jury awarded the Daleys both (a) the cost to repair their home so as to bring it up to the value as it ought to have been finished and *after the defects are repaired*, i.e., after the Daleys have received the benefit of the bargain, and (b) an additional ten percent diminution in value of the contract price of the house, i.e., excess of the fair market value to the Daleys. The trial court properly reduced the award because it was not a proper measure of damages for a contract breach, i.e., in the contemplation of the parties.

First, no evidence ever established the fair market value of the house which is, of course, a threshold showing for a diminution in value. The contract price of a house, while probative, does not factually establish its fair market value.[21] The contract price may give rise to the inference that such is the value of the house at the time of contract, but by the time of the breach, the value of the house may have gone up or down from its contract price depending on the vagaries of the market at the time. Therefore, there should have been proof of the fair market value at the time of the breach.

Second, the jury's award exceeded the difference in the value of the house as completed by the contractor and the value of the house as it ought to have been finished, i.e., the benefit of the bargain, as was properly demonstrated by the cost to repair. As such, it is a windfall to the Daleys. The Daleys point to their expert's testimony at trial and argue in their brief that, even after repairs are made, a property with a history of substantial construction defects "will suffer a ten to fifteen percent reduction in market value due to the stigma *future* buyers will associate with the property." (Emphasis supplied.) However, proof of the fair market value immediately after the breach of contract would have reflected any such damage. Cost to repair and diminution in value are allowed as the measure of damages only in tangible property cases and not in improved realty cases, except where there exists *defects* that cannot be repaired.[22] Here, there was no evidence that, after proper and reasonable repairs, permanent defects would continue to exist.

Further, "[s]tigma to realty, in and of itself, is too remote and speculative to be a damage."[23] In that regard, the Daleys' expert testified that a disclosure form where structural damage has been indicated "would tend to make a buyer fearful of continuing problems . . . to what degree, I couldn't. I couldn't tell you what the number is but it would certainly have an impact in a negative way." When pressed, the expert offered a negative impact "in a range of ten to 15

---

[21] *Hortman v. Cantrell*, 173 Ga. App. 429, 430 (326 SE2d 779) (1985).
[22] *Ray v. Strawsma*, supra at 624.
[23] *Hammond v. City of Warner Robins*, 224 Ga. App. 684, 690 (482 SE2d 422) (1997).

percent, I would say. That would be an educated guess." The witness also testified that the disclosure form which could instill such a fearful reaction would not be needed if the Daleys sold their house "by owner," which is possible considering Mrs. Daley is a lawyer and a licensed real estate agent.

The most obvious problem, then, with the Daleys' calculation is that it is predicated upon a future loss that may or may not be sustained depending on the sensibilities of some future buyer and whether, in fact, the repaired defects are disclosed to such future buyer and, in fact, generate the anticipated "stigma."[24] None of these conditions precedent to the argued future loss can be factually established.

Finally, the argued loss in this case is based on a diminution of a speculative future value of the Daleys' fully repaired home at the time of *resale*, a future event. Clearly, future loss is not a proper measure of damages for improved realty, because the plaintiff would be placed in a superior position since "fair market value" of improved realty depends upon time and so many other variables. In this case, if the Daleys believed that there had truly been a diminution in the fair market value of their house, then such could have been shown by the contract price and proof of the fair market value at the time of breach, which should reflect the cost to repair *and* any diminution in value below the contract price.

> The burden is on the plaintiff to show both the breach and the damage, and this must be done by evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of damages. It cannot be left to speculation, conjecture and guesswork.[25]

Here, the trial court properly reduced the jury's award to the legal measure of damages suffered by the Daleys.

8. The Daleys' contention that the damage award should include the estimated cost to replace the granite countertops is meritless as the jury found for Ryland on its counterclaim regarding the kitchen countertops as part of its general award.[26]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

---

[24] See id.

[25] (Citation and punctuation omitted.) *Wipo v. Cook*, 187 Ga. App. 7, 8-9 (1) (369 SE2d 306) (1988); *David Enterprises v. Kingston Atlanta Partners*, 211 Ga. App. 108, 111 (438 SE2d 90) (1993).

[26] See footnote 10, supra.

DECIDED JULY 21, 2000 —
RECONSIDERATION DENIED AUGUST 9, 2000 

*King & Croft, F. Carlton King, Jr.*, for appellant.
*Weinstock & Scavo, Richard J. Capriola, Jet Harris*, for appellees.