## A03A0174. CITY OF ATLANTA et al. v. CONNER.
### (585 SE2d 634)

ELLINGTON, Judge.

The City of Atlanta appeals from the trial court's judgment awarding homeowner Lavonia Conner $100,000 in this contract dispute. Because the trial court used an improper measure of damages that resulted in a windfall to the appellee, we vacate the award and remand for a recalculation of damages.

The record shows that Conner owned a small, wood frame house in southeast Atlanta. The 1,100-square-foot house was approximately 80 years old and had outdated plumbing, heating, and electrical systems. In 1990, the roof began to leak. A portion of the roof collapsed in 1994, making the house uninhabitable and forcing Conner to move out. In 1998, the City of Atlanta approved Conner's application for a housing rehabilitation loan. Under the rehabilitation program contract, the City was responsible for selecting and hiring a builder to bring the house up to building code specifications. On April 24, 1998, the City hired a builder based upon his low bid of $38,396.50. Conner signed a $38,396.50 promissory note and security deed in favor of the City. The balance due under the note would be forgiven, however, if Conner lived in the restored house for five years.

In August 1998, the builder tore off the roof and removed part of the floor. At that point, he determined that he could not perform the necessary repairs under the contract and abandoned the project. The City paid the builder for his demolition work, and left the house uncovered and unprotected. Between 1998 and 2000, Conner repeatedly tried without success to get the City to finish the project. The City attempted to hire another builder, but the bids exceeded the funding limits of the City's housing rehabilitation program. Eventually, the City notified Conner that she would have to secure additional private funds to finish the project. By this time, however, the

house had suffered severe water damage and had deteriorated to the point where it could not be repaired.

Conner sued the City for breach of contract, equitable relief, and other claims. The trial court granted summary judgment to Conner on the City's liability under the contract.[1] The City did not appeal this ruling. The trial court conducted a bench trial on the issue of damages pursuant to the breach, as well as on Conner's request for the cancellation of her note and security deed and for an injunction prohibiting the City from tearing down her house.

At trial, Conner's expert testified that he did not see the house until 2001 and did not know its condition or value before the 1998 breach. He stated, however, that other properties in the area were selling for as much as $379,900, although he admitted that he did not know the condition of those homes when they were sold. He also admitted that he did not know the value of Conner's lot at the time of the trial. In contrast, the City's expert testified that unrenovated houses in the area were selling for between $15,000 and $32,000, and he opined that Conner's house had been worth between $15,000 and $17,000 before the 1998 breach due to its age, code violations, and leaking roof. He opined that the house may have been worth up to $50,000 if the contracted repairs had been timely performed. He also testified that the house had no value by 2000, although the lot had a value of $7,000 to $8,000.

The witnesses testified to the dilapidated condition of the house in 2000, and it was undisputed that the house was not salvageable. In fact, the witnesses testified that the house was likely to collapse and that it presented a danger to surrounding homes. Even though the parties agreed that it was impracticable to repair the house, Conner's expert witness testified that it would cost approximately $150,000 to repair or, more accurately, to rebuild the house to its condition when it was originally constructed, but with upgraded electrical and plumbing systems and with additional modern features, including central heating and air conditioning.[2]

Having heard this evidence, the trial court concluded that the $110,000 to $150,000 cost to rebuild and upgrade the home was the appropriate measure of damages. In its final order, the trial court indicated that it intended to "remov[e] any impediments to Ms. Conner's sale or rebuilding of her property" in order to avoid awarding a

---

[1] The trial court also granted summary judgment on Conner's Open Records Act claim. Following these grants of summary judgment, the trial court found that it did not need to rule on Conner's claims for abatement of a nuisance and inverse condemnation.

[2] None of the parties presented testimony regarding the cost to restore the house to its condition before the 1998 breach or to rebuild it to the condition it would have had if the contracted repairs had been completed in a timely manner.

windfall. It cancelled Conner's $38,396.50 promissory note and security deed and, after finding that the house was not salvageable, denied Conner's request for an injunction and gave permission to the City to demolish the house at its own expense. The trial court then awarded Conner $100,000.

On appeal, the City contends the court erred in using the cost to repair as the measure of damages, given that the house was beyond repair and that returning the house to its pre-injury condition would be an "absurd undertaking." We agree.

Generally, the measure of damages for breach of a construction contract is "the difference between the value of the work as actually done and the value which it would have had if it had been done properly under the contract. . . . [T]his difference in value can be shown by evidence of the reasonable cost of correcting the defect." (Punctuation omitted.) *Magnus Homes v. DeRosa*, 248 Ga. App. 31-32 (1) (545 SE2d 166) (2001). However, when damage to the property resulting from a breach of contract cannot be reasonably repaired, the measure of damages is "the property's value as diminished by irremediable defects . . . deducted from the value of the house as it should have been completed according to the contract. . . . If the damage cannot be repaired, it seems pointless error to insist the value be determined by cost of repair." *Ray v. Strawsma*, 183 Ga. App. 622, 624 (1) (359 SE2d 376) (1987). Regardless of the measure of damages, however, the fair market value of the property must be proven, and, although exact figures are not necessary, the trier of fact must be able to "reasonably estimate [the fair market value] without resort to guesswork." (Citation omitted.) *Song v. Brown*, 255 Ga. App. 562, 563 (565 SE2d 884) (2002). See also *Ryland Group v. Daley*, 245 Ga. App. 496, 502-503 (7) (537 SE2d 732) (2000) ("[T]he plaintiff is entitled only to the benefit of the bargain or to be made whole and not to recover a windfall.").

In this case, the fair market value of the property before and after the breach was disputed, as was the value of the property if the contract had been fully performed. The trial court made no findings as to these values and, in fact, indicated that it could not discern "the true value of the property" from the evidence presented.[3] Therefore, on appeal, we are unable to determine the proper amount of damages in this case. Even so, it is clear from the evidence presented that the

---

[3] Upon ruling after the close of evidence, the trial court made the following remark: I don't know the true value of that property. I do know that it is – those in-town properties are very valuable now, but the essence of my ruling is the City has screwed up. People ought to be held responsible for this. But I don't want [Conner] to have some huge windfall. Maybe this is a windfall, but you know, I think it is as close to right as I can get it. So that's what I'm doing.

appropriate award of damages is significantly less than the award at issue, $100,000.[4]

We remand to the trial court with directions to conduct a new hearing on damages and to calculate the damages consistent with this opinion, based upon the following formula: add the fair market value of the property if the contract had been properly performed plus the cost to Conner for removing the existing structure,[5] then subtract the value of the existing structure following the breach,[6] and subtract the value of the lot.[7] The trial court should then award Conner the difference as damages.[8]

*Judgment vacated and case remanded with direction. Blackburn, P. J., and Phipps, J., concur.*

DECIDED JUNE 20, 2003 —
RECONSIDERATION DENIED JULY 17, 2003.

*Linda K. DiSantis, Bernard R. Thomas, Sr., Michelle L. Thomas*, for appellants.
*Gary J. Leshaw*, for appellee.

---

[4] There was evidence that, because the house was located in a community of southeast Atlanta that was undergoing extensive rejuvenation, the primary value of the property was from the lot, thereby making the value of this house, regardless of its condition, much less significant. In fact, Conner testified that she was offered $105,000 for the house and lot in late 2000, even though the house had been irreparably damaged.

[5] Since the trial court gave the City permission to remove the structure at its own expense, it is presumed that the structure's demolition will cost Conner nothing.

[6] It is undisputed that the value of the existing structure in this case is zero.

[7] Since Conner retains title to the lot, she is not entitled to an award of damages for its value.

[8] Under other circumstances, the trial court should also factor in the homeowner's outstanding note under the contract when calculating the damage award. The court in this case cancelled Conner's note, however, so it is not considered as a factor here.