A03A2289. MORRISON HOMES OF FLORIDA, INC.
v. WADE et al.
(598 SE2d 358)

ADAMS, Judge.

Marlene C. Wade and John Wade brought suit against Morrison Homes of Florida, Inc., alleging claims of breach of contract, breach of warranty, and fraud in connection with the building of the Wades' home. Morrison Homes appeals the trial court's denial of its motion for judgment notwithstanding the verdict after a jury awarded damages and attorney fees to the Wades. We affirm.

The Wades purchased the house on February 27, 1997, and Marlene Wade moved in a short time later. Although John Wade is a joint owner of the property, he does not reside there. After closing on the house, Marlene Wade was furnished with Morrison Homes' blanket warranty. Under the terms of the warranty, Morrison Homes agreed to conduct a series of post-closing inspections at 40 days, 11 months, and 22 months after closing.

In November 1997 Marlene Wade began to notice problems with her concrete slab floor of the garage and notified Morrison Homes, which replied that it would address the problem in the 11-month inspection. Afterward, the parties communicated back and forth by letter and telephone addressing various issues in connection with the house. By June 1998, the Wades still had concerns about cracks in the concrete driveway and the garage slab; cracks in the front walkway and steps; and cracks in the center column of the front garage wall.

In response to these concerns, Morrison Homes installed crack gauges or meters to monitor any future expansion of the driveway, but contended that these devices did not reveal any cracks of sufficient size to invoke the terms of the warranty. The company also made several attempts to fix the front walkway and steps, but Marlene Wade was not satisfied with these efforts. The parties were unable to come to an agreement as to the proper procedure for remedying the problems with the center garage column.

The Wades subsequently retained David Bennett, a licensed general contractor, to inspect the home and also hired a structural engineer and geotechnical engineers to test the soil underneath the garage. These results revealed fill dirt under the garage, and further showed that no footing was built underneath the center garage column despite the fact that it was a load-bearing structure. At trial, the Wades presented evidence showing numerous building code violations by Morrison Homes in the construction of the house. They also demonstrated that Morrison Homes failed to comply with its own plans in the house construction.

Bennett testified that the cost to repair the home would be $87,642. Although his earlier estimate, in December 1998, set the cost at "maybe $65,000," he attributed the difference to the increased cost of materials and labor over the intervening four-year period, as well as to some additional items of work.

The jury awarded the Wades $68,460 in damages and $71,540 in attorney fees. After finding that Morrison Homes was negligent and had breached both the contract and the warranty, the jury nevertheless awarded damages only on the negligence claim. Morrison Homes then moved for a j.n.o.v., but the trial court denied the motion.

"A . . . j.n.o.v. is required where there is no conflict in the evidence as to any material issues and the evidence introduced (construed in favor of the nonmovant) demands a particular verdict. Thus, the standard of appellate review of a trial court's denial of a motion for . . . j.n.o.v. is the any evidence test." (Citations omitted.) *Allgood v. Allgood*, 263 Ga. App. 177, 179 (1) (587 SE2d 377) (2003).

1. Morrison Homes asserts that the trial court erred in denying its motion for j.n.o.v. because the Wades failed to introduce sufficient evidence concerning the cost of repair to enable the jury to set damages with a reasonable certainty. Morrison Homes asserts that the proper measure of damages in this case is the difference between the value of the house as it ought to have been finished under the contract and the value of the house as completed by the contractor, citing *Ryland Group v. Daley*, 245 Ga. App. 496, 498 (1) (a) (537 SE2d 732) (2000). The company acknowledges, however, that this diminution in value may be proven by showing the cost to repair the defects, if the defects are repairable. *Ray v. Strawsma*, 183 Ga. App. 622, 623 (1) (359 SE2d 376) (1987).[1]

Morrison Homes further argues that the Wades were required under *Ryland* to prove the diminution in value to the home as of November 1997, which the company asserts was the date it refused to repair any damage to the driveway or garage. Because the Wades did not offer evidence of repair or the value of the property as of this date, Morrison Homes contends they failed to prove their damages.

Here, the Wades introduced detailed evidence of the cost to repair the property. Bennett testified that the cost to repair the Wades' home would be $87,642 and produced a written line item estimate to support this testimony. Morrison Homes had the opportunity to thoroughly cross-examine Bennett on any portion of this estimate. And the Wades took the position that Morrison Homes did

---

[1] As this Court has observed, evidence of cost of repair "is more likely to represent the true damage suffered from the failure of a contractor to complete his contract than would the opinion of an expert as to the difference in values. . . ." *Magnus Homes, LLC v. DeRosa*, 248 Ga. App. 31, 32 (1) (545 SE2d 166) (2001).

not flatly refuse any more repairs until November 1998, not November 1997 as Morrison Homes asserts. Bennett testified that as of December 1998, the repairs would have cost approximately $65,000 and attributed the difference to increased labor costs as well as later-added items.

Even assuming, without deciding, that *Ryland* restricts the damages in this case to the date that Morrison Homes refused to repair the damages, the jury could have fixed that date to be November 1998. And Bennett's detailed estimate coupled with his estimation of the repair costs in 1998 provided a basis for the jury to calculate damages. "Questions of value are peculiarly for the determination of the jury, where there is any data in the evidence upon which the jury may legitimately exercise their own knowledge and ideas." (Citation and punctuation omitted.) *Ray v. Strawsma*, 183 Ga. App. at 624 (1).

Thus, we find that the jury award of $68,460 was within the range of the evidence, and we find no error in the trial court's denial of a j.n.o.v. on this ground.

2. Morrison Homes also challenges the award of attorney fees on the ground that the Wades failed to prove bad faith.

A plaintiff is entitled to recover attorney fees under OCGA § 13-6-11 only if he can establish that the defendant has acted in bad faith in the underlying transaction. Therefore, "the element of bad faith relates to the defendant's conduct in entering into the contract or pertains to the transaction and dealings out of which the cause of action arose, not to the defendant's conduct after the cause of action arose." (Citation omitted.) *Dept. of Transp. v. Hardin-Sunbelt*, 266 Ga. App. 139, 146 (4) (596 SE2d 397) (2004). "Even slight evidence of bad faith can be enough to create an issue for the jury." (Citation omitted.) *Freightliner Chattanooga v. Whitmire*, 262 Ga. App. 157, 163 (2) (584 SE2d 724) (2003). An award of bad faith attorney fees should be affirmed if there is any evidence to support it. *Clearwater Constr. Co. v. McClung*, 261 Ga. App. 789 (584 SE2d 61) (2003).

Morrison Homes asserts the evidence of phone calls and correspondence with Marlene Wade indicates that it was trying to work with her to resolve any problems and that it did not act in bad faith. In particular, the company contends that it cannot be guilty of bad faith because Marlene Wade acknowledged that the cracks in the driveway were within the range of tolerance specified in the blanket warranty.

But the Wades take the position that the back and forth communication between the parties was evidence of Morrison Homes' intent to delay and prevent discovery of additional problems until the blanket warranty's two-year period ran out in February 1999. The evidence showed that Marlene Wade was required to hire engineers

at her own expense in late 1998 to discover the cause and extent of the problems with the slab and the center support beam in the garage, after repeated appeals to Morrison Homes to remedy the problems. And the Wades also presented evidence that some of the repairs Morrison Homes undertook to make were inadequate and defective. Moreover, they established that the company violated a number of building codes and their own building plans in the initial construction of the residence. We find that, in light of this evidence, Marlene Wade's admission regarding the cracks in the driveway did not relieve the company of bad faith liability as it related to just one of the problems with the house. Thus, the trial court properly submitted the issue of bad faith to the jury and did not err in denying the motion for j.n.o.v. See *Freightliner Chattanooga*, 262 Ga. App. at 163 (2); *Nulite Indus. Co. v. Horne*, 252 Ga. App. 378, 381 (4) (556 SE2d 255) (2001); *Runion v. Hofer*, 245 Ga. App. 854, 855 (1) (538 SE2d 462) (2000).

And contrary to Morrison Homes' contention, this case is not controlled by our recent decision in *Lexmark Carpet Mills v. Color Concepts*, 261 Ga. App. 622 (583 SE2d 458) (2003). There, the jury found that Lexmark had breached its warranty in connection with the sale and installation of carpeting, but the trial court directed verdicts on the plaintiff's other claims, including negligence. Id. at 625. The evidence showed that after the plaintiffs complained about the carpet's wear, Lexmark hired an expert to inspect the carpet and offered to replace a portion of the carpet in the more heavily trafficked areas. The plaintiffs rejected that offer, instead insisting on recovering expenses that were clearly not contemplated by the warranty. Id. In contrast, there was evidence in this case that because Morrison Homes failed to respond to Marlene Wade's concerns, she was forced to hire her own experts to investigate the matter. And there was no evidence in *Lexmark*, for example, that the company violated any building codes or acted negligently in installing the carpet.

3. Morrison Homes next asserts that the trial court erred in denying its motion for j.n.o.v. because the Wades were not entitled to recover attorney fees on claims for which the jury did not award money damages. But as the trial court correctly found, this ground was not raised in Morrison Homes' motion for directed verdict as required by OCGA § 9-11-50 (b). Thus, the company was precluded from raising this argument in the motion for j.n.o.v. See *Lincoln v. Tyler*, 258 Ga. App. 374, 378 (3) (574 SE2d 440) (2002); *Dee v. Sweet*, 218 Ga. App. 18, 21 (2) (b) (460 SE2d 110) (1995).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 26, 2004.

*Moore, Ingram, Johnson & Steele, G. Phillip Beggs, Amy K. Weber*, for appellant.

*Dupree, Poole & King, Russell D. King, Patrick N. Millsaps*, for appellees.