**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 10, 2025**

# In the Court of Appeals of Georgia

A24A1699. MUELLER SYSTEMS, LLC v. SIPCO, LLC.

WATKINS, Judge.

Mueller Systems, LLC, the licensee in this breach of contract case, appeals from the trial court's order in favor of SIPCO, LLC, the licensor, on the parties' cross-motions for summary judgment. For the reasons discussed below, we conclude that the trial court correctly granted summary judgment to SIPCO on Count II of the complaint, Mueller's counterclaims, and Mueller's claim for OCGA § 13-6-11 attorney fees, but erred by denying Mueller's request for summary judgment on Counts I and III of the complaint. Accordingly, we affirm in part and reverse in part the trial court's summary judgment order.

On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there

is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate.[1]

So viewed, the record reveals that in 2011, the parties entered into a patent lease agreement (the "Agreement") through which SIPCO allowed Mueller to incorporate certain patented material (communication modules for water meters) into its products ("Licensed Products") in exchange for royalty payments on the sales of those products. Under the terms of the Agreement, Mueller agreed to provide SIPCO with quarterly reports showing all information necessary to determine the royalties owed. Additionally, Mueller agreed to audit its own payment obligations, and SIPCO had the right to audit Mueller's sales records.

In 2022, SIPCO filed a breach of contract action against Mueller, alleging that Mueller had failed to comply with its reporting and self-audit obligations and had refused to allow SIPCO access to certain records which SIPCO contends are

---

[1] (Citations and punctuation omitted.) *Patel Taherbhai, Inc. v. Broad Street Stockbridge II, LLC*, 352 Ga. App. 113 (834 SE2d 117) (2019).

necessary for it to conduct an audit. SIPCO sought damages and specific performance on its breach of contract claims, plus attorney fees under OCGA § 13-6-11.

Mueller filed counterclaims for setoff and recoupment, breach of contract, and declaratory judgment. As facts underlying the counterclaims, Mueller alleged that it had spent millions of dollars to settle a third party's claim that certain Licensed Products sold by Mueller were defective, and it sought to recover the royalties it had previously paid to SIPCO for those products. Mueller also sought OCGA § 13-6-11 attorney fees.

Both parties moved for summary judgment, and, as detailed below, the trial court resolved the motions in SIPCO's favor. Mueller now appeals from the summary judgment order.

1. In Count I of its complaint, SIPCO alleged that Mueller breached Section 5.1 of the Agreement, under which Mueller agreed to send SIPCO royalty reports within 30 days after the end of each quarter. The trial court denied Mueller's request for summary judgment on this claim, concluding that there was no evidence to support Mueller's contention that it had sent the required reports. On appeal, Mueller contends that the trial court imposed an improper burden of proof. We agree.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[2]

When Mueller moved for summary judgment on this claim, it attached an affidavit from its Chief Legal Officer, Chason Carroll, averring that "Mueller has consistently provided quarterly royalty reports under the Agreement[.]" Carroll further averred that the only time SIPCO ever asked for allegedly missing quarterly reports was in 2016, and Mueller promptly responded to that inquiry and provided the reports. In response, SIPCO has not identified any evidence that any quarterly royalty

---

[2] *The West Firm v. Central United Methodist Church of Atlanta*, 373 Ga. App. 148, 150-151 (2) (907 SE2d 233) (2024) (punctuation omitted), quoting *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

report was not sent by Mueller. SIPCO has, therefore, failed to establish that there is a triable issue of fact on this claim,[3] and the trial court erred in denying Mueller's motion for summary judgment.

2. In Count II of its complaint, SIPCO alleged that Mueller breached Section 5.2 of the Agreement, under which Mueller agreed to prepare an annual self-audit. The trial court entered summary judgment for SIPCO, ordering Mueller to "comply with Section 5.2 of the Agreement and engage auditors to examine its records and prepare the report required by Section 5.2 for each of the six years preceding the complaint, and each subsequent year of the Agreement."[4] On appeal, Mueller argues that it, rather than SIPCO, was entitled to summary judgment on this claim. We disagree.

Mueller acknowledges that under Section 5.2, it agreed to audit its own records and prepare an annual self-audit report, and it does not dispute the trial court's finding that it wholly failed to do so. Instead, Mueller argues that the doctrines of waiver and

---

[3] See *The West Firm*, 373 Ga. App. at 150-151 (2).

[4] The trial court's reference to six years prior to the filing of the complaint may have been based on the six-year statutory limitations period for breach of contract actions. See OCGA § 9-3-24; *Cotton States Mut. Ins. Co. v. Atkinson*, 120 Ga. App. 695, 697 (172 SE2d 188) (1969).

laches bar SIPCO from insisting on a self-audit at this point because SIPCO did not

request such reports until March 2022 — more than ten years after the parties'

contract was executed. But Mueller has not identified any conduct by SIPCO that

unequivocally demonstrated SIPCO's intent to waive its rights under this provision,

so Mueller has not established waiver.[5] And Mueller has not established that SIPCO's

delay in insisting on its rights caused Mueller any prejudice, so it has not established

laches.[6]

Mueller further argues that it was "useless" to require Mueller to self-audit the

same information that SIPCO itself will be auditing. But the parties expressly agreed

---

[5] See *Ochoa v. Coldwater Creek Homeowners Assn.*, 361 Ga. App. 267, 270 (1) (863 SE2d 730) (2021) ("It is well recognized that a party to a contract may waive contractual provisions for [its] benefit. A waiver may be shown through a party's conduct. But the law will not infer the waiver of an important contract right unless the waiver is clear and unmistakable. And because waiver is not favored under the law, the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation. Indeed, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist. The burden of proof lies with the party asserting waiver.") (citation and punctuation omitted).

[6] *Fontaine v. Home Depot*, 250 Ga. App. 123, 126 (1) (550 SE2d 691) (2001) ("Laches requires more than the passage of time; laches also requires prejudice arising from that passage of time[.]").

to this term — that Mueller would perform an annual self-audit and, under Section 4.2, that Mueller would share its report with SIPCO — and as the trial court observed, Mueller's audit report might make it easier for SIPCO's auditors to perform their review.

Finally, Mueller argues that the trial court should not have granted SIPCO specific performance on this claim because that form of relief will require ongoing supervision by the court. But Mueller has not explained why this case will require any extra judicial supervision, and it seems that here, as in most cases, any subsequent failure to comply can be addressed through a contempt proceeding.

Under the circumstances, Mueller has failed to establish that the trial court erred by granting summary judgment to SIPCO on Count II of the complaint. We therefore affirm that portion of the trial court's judgment.

3. In Count III of its complaint, SIPCO alleged that Mueller breached the Agreement by refusing to allow SIPCO to exercise its right to audit Mueller's records, as described in Section 4.2 of the Agreement. The parties agree that SIPCO has a right to audit Mueller's records under Section 4.2, but they disagree as to which records SIPCO may access to perform that audit. Mueller interprets the Agreement narrowly,

emphasizing that its Legal Officer testified that the only "record" Mueller keeps of a sale is the invoice and arguing that under the plain language of the Agreement, SIPCO is entitled to access only Mueller's invoices of sales of Licensed Products. SIPCO interprets the provision more broadly, arguing that it has the right to access "any and all records that include information about sales of Licensed Products, not just invoices." The trial court adopted SIPCO's interpretation and ordered as follows:

> The Court orders that Mueller allow SIPCO's auditors to conduct the audit authorized by the Agreement and have access to Mueller's books and records, including records of all sales of Licensed Products. This shall include detail sales ledgers and other records of sales in such form that all royalties owed under the Agreement may be readily and accurately determined and include any records or information necessary for the purpose of verifying the amounts owed under the Agreement.

On appeal, Mueller contends that the trial court erred by allowing SIPCO to access a broader range of documents than provided by the plain language of the Agreement. We agree.

The Agreement provides, in relevant part, as follows.

4. RECORDS

4.1 Licensee [Mueller] shall keep at its principal place or [sic] business true and accurate *records of all sales of Licensed Products* subject to this Agreement in such form that all royalties owed hereunder to Licensor may be readily and accurately determined. Such records shall be kept for three years from the end of the Licensee's Fiscal Year during which the sales reflected in the records were made.

4.2 Licensor [SIPCO] shall have the right, from time to time, at reasonable times during normal business hours and at its expense, but not more often than one time each year upon prior written notice to Licensee, to *examine the records of Licensee described in paragraph 4.1 above* for the purpose of verifying the amounts owned to Licensor hereunder and the accuracy of the reports furnished by Licensee and Licensee's Auditors under Section 5 hereof. . . .

 (Emphasis supplied).

"The cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract."[7]

Contract interpretation is guided by three steps: First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is

---

[7] (Citation and punctuation omitted.) *Overlook Gardens Properties v. Orix, USA*, 366 Ga. App. 820, 823 (1) (a) (884 SE2d 433) (2023).

ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[8]

Here, under Section 4.1, Mueller agreed to keep "accurate records of all sales of Licensed Products" in a format that will allow the parties to readily and accurately determine the royalties due to SIPCO. And under the plain language of Section 4.2, SIPCO is entitled to access *those records* to conduct an audit.

The pertinent question, then, is which of Mueller's records are included in the universe of "records of all sales of Licensed Products." To the extent this phrase is ambiguous, we must apply the rules of contract construction to determine what the parties meant when they signed the Agreement. "If the intention of the parties as of the time of executing the agreement is clear, it should be enforced, even though the parties disagree as to its meaning as of the time of the litigation."[9] Here, Mueller's

---

[8] (Citation omitted.) *Lambert v. DMRT, LLC*, 370 Ga. App. 103, 109 (1) (b) (i) (894 SE2d 456) (2023).

[9] (Citation, punctuation, and emphasis omitted.) *Paces Partnership v. Grant*, 212 Ga. App. 621, 624 (2) (442 SE2d 826) (1994).

Chief Legal Officer testified that he was part of the team who drafted the Agreement, that invoices are the only "records" Mueller keeps of its sales, and that when the parties negotiated the agreement and talked about this provision, they understood the term "records of sales" to mean "invoices." Although SIPCO's current leadership now contends that access to invoices alone is insufficient, SIPCO has not identified any evidence that the parties intended for the phrase to carry a different meaning. Notably, it appears to be undisputed that if Mueller's invoices are accurately kept, and if all invoices involving Licensed Products are accurately identified, those invoices will allow the parties to calculate the royalties owed to SIPCO. We thus conclude that Section 4.1's reference to "records of all sales of Licensed Products" was intended to mean invoices of sales of Licensed Products.

SIPCO contends, and the trial court agreed, that because the purpose of an audit under Section 4.2 is for SIPCO to "verify[ ] the amounts owed" and to "verify . . . the accuracy of the reports furnished by [Mueller]," SIPCO must be permitted to access additional records beyond those invoices that Mueller itself has identified as reflecting sales of Licensed Products. But that interpretation is contrary to the plain language of the parties' Agreement — which, again, provides that SIPCO

11

will have access to the records identified in Section 4.1. And while this narrow interpretation may not allow SIPCO to determine whether Mueller failed to identify some sales as involving Licensed Products, "it is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties."[10]

We therefore conclude that the trial court erred in its ruling on this claim, and we reverse that portion of the trial court's judgment.

4. As to Mueller's counterclaims, the trial court concluded that Mueller is not entitled to any sort of recovery for previously-paid royalties based on its settlement with a third party. This issue is based primarily on Section 1.12 of the Agreement, which defines "Net Sales" — upon which Mueller's royalty obligations to SIPCO are based — as "the total amount invoiced for Licensed Products after deduction of . . . any credits actually given for returned or defective goods[.]"

The basic facts underlying Mueller's counterclaims are not in dispute. Pursuant to a 2013 agreement between Mueller and Siemens Industries, Inc., Mueller provided products and services for Siemens's project in the City of Jackson, Mississippi. In 2018, the City filed a lawsuit concerning the project; Siemens ultimately agreed to pay

---

[10] (Citation omitted.) *Sasser & Co. v. Griffin*, 133 Ga. App. 83, 86 (2) (a) (210 S.E.2d 34) (1974).

nearly $90 million to settle the City's claims. Siemens then sought to recover a portion of the settlement amount from Mueller. Mueller paid Siemens $10 million, and Mueller subsequently recovered $5 million from insurance.

Mueller had already paid royalties to SIPCO for the Licensed Products it sold to Siemens for this project. In its counterclaims, Mueller seeks to recover those royalties, which totaled $105,000. Crucially, Mueller asserts that its $5 million payment to Siemens was a "credit[ ] actually given" for allegedly defective Licensed Products,[11] such that the amount invoiced for those goods must be deducted from its Net Sales when calculating the royalties due to SIPCO. Similar litigation is currently pending regarding a project for the City of Cleveland, Mississippi, and Mueller seeks a declaratory judgment applying the same theories to products it sold for that project.

The trial court concluded that Mueller's counterclaims fail because Mueller has not identified any evidence supporting its assertion that its payment to Siemens was

---

[11] We note, however, that at the trial court's hearing on the parties' motions, Mueller appeared to argue that the "credit" it gave was for $10 million, not $5 million, as Mueller's attorney stated, "[C]ounsel is saying where is the credit? The settlement is the credit. . . . [T]he settlement for $10 million is the credit, and the $105,000 in royalties comes out of that."

a "credit[ ] actually given for returned or defective goods" rather than a payment to avoid potential liability for a broader range of matters.[12] We agree.

As we consider this issue, we note, first, that Mueller's settlement agreement with Siemens (which was filed under seal in this case) did not describe the settlement payment as a refund for defective products but, rather, provided that the payment was made in connection with the compromise of the parties' claims and served to discharge Mueller from any and all claims related to the City of Jackson project. On appeal, Mueller argues that even though the City brought a variety of claims against a variety of defendants, all of its allegations against Mueller were based on alleged defects in the products Mueller had provided. But Mueller settled with Siemens, not with the City directly, and their settlement agreement did not describe Mueller's potential liability as narrowly as Mueller contends.

We further note that in public filings, Mueller's parent company reported the payment to Siemens as an expense under the category of "strategic reorganization and other charges" (alongside expenses like facility relocation expenses and senior

---

[12] The trial court concluded that Mueller's counterclaims fail for two additional and independent reasons, but we need not address those grounds to affirm the trial court's ruling on this issue.

executive severance costs), which affected its operating expenses, rather than as an expense that affected its net sales. SIPCO pointed to the public filings as support for its argument that the payment was an operating expense rather than a credit for a previous sale, and the trial court adopted the same interpretation in its order. On appeal, Mueller argues that the trial court should not have adopted SIPCO's interpretation of the public filings because SIPCO advanced its position only through argument — not through expert accounting testimony. But the parent company's categorization of this payment is reflected on the face of the public filings, and it is Mueller, not SIPCO, who has the burden on this issue; to prevail on its counterclaims, Mueller must establish that it actually gave a credit for returned or defective goods.[13]

Ultimately, despite Mueller's insistence that the payment was a "credit[ ] actually given" within the meaning of this provision, it has not produced any evidence to support that assertion. Consequently, we affirm the trial court's grant of summary judgment to SIPCO on Mueller's counterclaims.

---

[13] See *Nationsbank N.A. v. Green*, 218 Ga. App. 665, 667-668 (2) (462 SE2d 761) (1995) ("One cannot merely stand on the pleadings to defeat a motion for summary judgment, so [the party bringing the counterclaim] had the burden to produce evidence creating a genuine issue of material fact [on the counterclaim].").

5. Finally, both parties sought attorney fees and costs of litigation under OCGA § 13-6-11, which provides that although expenses of litigation generally are not allowed as part of damages, "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." The trial court granted summary judgment to SIPCO on Mueller's claim and ruled that SIPCO's claim must go to a jury. We affirm.

First, as to Mueller's claim, because SIPCO is entitled to summary judgment on Mueller's counterclaims, SIPCO is likewise entitled to summary judgment on Mueller's claim for attorney fees.[14]

Second, as to SIPCO's claim, the trial court identified several grounds on which a jury could conclude that Mueller has acted in bad faith, been stubbornly litigious, or caused SIPCO unnecessary trouble and expense. On appeal, Mueller insists that it has always acted reasonably and in good faith, but "[e]ven slight evidence of bad faith can

---

[14] See generally *Steele v. Russell*, 262 Ga. 651, 651-652 (2) (424 SE2d 272) (1993) ("[T]he expenses of litigation recoverable pursuant to OCGA § 13-6-11 are ancillary and may only be recovered where other elements of damage are also recoverable.").

be enough to create an issue for the jury."[15] "Indeed, only in the rare case where there is absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues."[16] Mueller has not established that this is such a rare case, so it has not established that it is entitled to summary judgment on SIPCO's claim.

For the foregoing reasons, we affirm in part and reverse in part the trial court's summary judgment order. We affirm the trial court's decisions regarding Count II of the complaint, Mueller's counterclaims, and the parties' OCGA § 13-6-11 claims, but we conclude that the trial court erred in denying Mueller's motion for summary judgment on SIPCO's claims regarding Mueller's reporting obligations (Count I of the complaint) and SIPCO's audit rights (Count III of the complaint), and so we reverse those portions of the trial court's order.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Hodges, J., concur.*

---

[15] (Citation omitted.) *Morrison Homes of Florida, Inc. v. Wade*, 266 Ga. App. 598, 600 (2) (598 SE2d 358) (2004).

[16] (Citation and punctuation omitted.) *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*, 306 Ga. App. 873, 877 (3) (703 SE2d 687) (2010).